UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**CHEYENNE LUKE PERCLE JR #495390**          CASE NO.  2:17-CV-00549

**VERSUS**                                    JUDGE SUMMERHAYS

**POLICE DEPT OF DERIDDER ET AL**            MAGISTRATE JUDGE KAY

**MEMORANDUM RULING**

Presently before the Court is the Joint Motion for Summary Judgment [ECF No. 165] filed by Defendants, Jay Purdue and Dwight Boone. Plaintiff opposes the Motion. For the following reasons, the motion is **DENIED**.

**I.**
**BACKGROUND**

This matter arises from the arrest of plaintiff Cheyenne Luke Percle following a high-speed police chase and crash on or about June 21, 2016.[1] Percle was placed in the rear seat of Officer Dwight Boone's patrol vehicle, with his hands handcuffed behind his back, for transport to DeRidder, Louisiana for booking.[2] Shortly thereafter, Percle slipped his hands from behind his back to his front, and then proceeded to disable the video camera recording the rear seat of Officer Boone's patrol vehicle.[3] Officer Boone then left Dequincy with Percle in the back seat and proceeded to drive back to DeRidder on Highway 27.[4] Officer Jay Purdue followed behind in his

---

[1] Deposition of Dwight Boone, Exhibit "H" to the Joint Motion for Summary Judgment ("Dep. Boone") at 10:23 – 13:17.
[2] Deposition of Jay Purdue, Exhibit "G" to the Joint Motion for Summary Judgment ("Dep. Purdue") at 21:7-24:9; *see also* Dep. Boone at 22:12-23:25.
[3] Deposition of Cheyenne Luke Percle, Exhibit "A" to the Joint Motion for Summary Judgment ("Dep. Percle") at 49:18-51:19; *see also* Boone at 22:12-23:25.
[4] Dep. Boone at 24:2-5.

1

own patrol vehicle.[5] During the drive back to DeRidder, Percle reached forward through the divider separating the front and rear seats of Officer Boone's patrol vehicle, and proceeded to place his hands – still handcuffed – over Officer Boone's head.[6] Officer Boone applied his brakes and brought his patrol vehicle to a stop along the side of Highway 27.[7] Percle was then removed from the vehicle, his hands re-secured behind his back, and then transferred to the rear seat of Officer Purdue's vehicle.[8] The Beauregard Parish Sheriff's Office ("BPSO") was notified and was requested to bring leg restraints for Percle.[9] BPSO deputies Oscar Lopez and Beau Barber arrived on scene, and Percle was removed from the rear of Officer Purdue's vehicle, placed in leg restraints, then placed back in the rear seat of Officer Purdue's vehicle.[10] Once Percle was re-secured and placed back in Purdue's patrol vehicle, Officer Purdue drove Percle back to Dequincy to be booked.[11] BPSO deputies Lopez and Barber removed Percle from the rear of Officer Purdue's vehicle and carried Plaintiff inside the Dequincy Police Department.[12]

On April 18, 2017, Percle filed the present lawsuit [ECF No. 1]. Percle alleges that, while parked on the side of the road, Officer Purdue "pull[ed] the Plaintiff to the edge of the Passenger back seat and start[ed] punching the Plaintiff in his face," then "pull[ed] the Plaintiff out of the Passenger Back door by his neck [and] slam[ed] the Plaintiff['s] face into the ground . . .," then "punch[ed] the Plaintiff in the back of the head several times.[13] In an amended complaint (ECF

---

[5] Dep. Purdue at 24:8-9.
[6] Dep Boone at 24:2 – 25:15.
[7] *Id.*; *see also* Dep. Purdue at 24:15-25:2.
[8] Dep. Purdue at 28:4-6; *see also* Dep. Boone at 26:22-27:1.
[9] *See* Dep. Purdue at 28:8-14, 33:17-34-6; *see also* Officer Jay Purdue's Response to Plaintiff's Interrogatory No. 6, Exhibit "D" to Joint Motion For Summary Judgment; Officer Jay Purdue's Response to Plaintiff's Supplemental Interrogatory No. 2, Exhibit "E" to Joint Motion For Summary Judgment; and Officer Dwight Boone's Response to Plaintiff's Supplemental Interrogatory No. 2, Exhibit "F" to Joint Motion For Summary Judgment.
[10] Dep. Purdue at 28:16-20, 33:2-9; *see also* Dep. Boone at 28:18-29:21.
[11] Dep. Purdue at 28:22-29:11.
[12] *Id.*
[13] *See* ECF No. 1 at ¶ 4.

No. 37), Percle named Officer Boone as an additional defendant. Percle alleges that Officer Boone assisted Purdue in transporting Percle and thus "failed to and/or neglected to obstruct, stop, or intervenne [sic]" in Officer Purdue's purported "use of excessive force against Plaintiff."[14]

## II.
### LAW AND ANALYSIS

### A. Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010). As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*,

---

[14] *See* ECF No. 37 at ¶37.

266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party). "Credibility determinations are not part of the summary judgment analysis." *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002). Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catlett*, 477 U.S. 317, 322 (1986)).

### B. Identification of Officer Purdue

Defendants' Joint Motion for Summary Judgment centers on Percle's identification of Perdue and Boone as the officers who assaulted him and violated his constitutional rights. "Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution."[15] Section 1983 "is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere."[16] To state a claim under section 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged violation was committed by a person acting under color of state law.[17]

Section 1983 does not "create supervisory or *respondeat superior* liability."[18] Rather, the plaintiff "must allege facts reflecting the defendants' participation in the alleged wrong, **specifying**

---

[15] *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992) (citing 42 U.S.C. § 1983).
[16] *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).
[17] *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008).
[18] *Oliver v. Scott,* 276 F.3d 736, 742 & n. 6 (5th Cir.2002); *see also Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir.1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability.").

*the personal involvement of each defendant.*"[19] Defendants point to deposition testimony and video "body cam" footage of Percle's arrest to cast doubt on Percle's identification of Officers Perdue and Boone as the officers who assaulted him. Applying the appropriate summary judgment standard, Defendants contend that this evidence negates an essential element of Percle's section 1983 claims: that Percle establish "the personal involvement of each defendant."

Starting with the identification of Officer Purdue, Defendants point to the deposition testimony of Percle and Officer Purdue. During his December 13, 2018 deposition, Percle was questioned about his arrest and assault allegations:

> Q: Once you were placed in the back of Purdue's unit, did you start kicking the door?
>
> A: Yes, sir.
>
> Q: Why?
>
> A: In pain.
>
> Q: And where were you hurting?
>
> A: Head, face, ribs, neck and my leg still.
>
> Q: Your right leg?
>
> A: Right leg?
>
> Q: Anything else?
>
> A: No, sir.
>
> Q: Did an officer open the door and instruct you to stop kicking the door?
>
> **A: He did not open the door and instruct – He hogtied me.**
>
> **Q: Who is "he"?**

---

[19] *Jolly v. Klein,* 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar,* 950 F.2d 290, 292 (5th Cir.1992)) (emphasis added).

**A: Both the officers.**

**Q: Purdue and Boone?**

A: Yes, sir.

Q: When you say "Hogtied," are you referring to your legs were shackled to the handcuffs?

A: Yes, sir.

**Q: So just to make sure I understand your testimony, the same officer that hogtied you is the same one that pulled you out of the vehicle. Fair?**

**A: Yes, sir.**

**Q: And that's the same officer that you said hit you in the face repeatedly. Fair?**

**A: Yes, sir.**

Q: Once you were shackled were you were then taken to Dequincy for booking?

**A: After I was shackled several threats were made. I believe one officer came to the door and threatened to beat my brains in and punch me in the face.**

**Q: Which officer was that?**

**A: I believe it was Bo --- excuse me, Purdue.**

**Q: Again, same officer that hit you and then shackled you, same officer that made the threats against you?**

A: Yes, sir, I believe so.

Q: Any other officers threaten?

A: No, sir.[20]

Percle was then specifically questioned about the physical appearance of the officer who he alleges assaulted him, and who he identifies as Officer Purdue:

---

[20] Dep. Percle at 57:15-59:8 (emphasis added).

Q: Before June 21, 2016, had you ever had any run-ins with Officer Jay Purdue?

A: No, sir.

Q: Have you ever met Jay Purdue as far as you know?

A: No, sir.

Q: Ever even heard his name before June 21, 2016?

A: No, sir.[21]

* * *

**Q: Okay. What does Jay Purdue look like?**

**A: He was kind of short, white-haired man I believe, medium build**.[22]

Defendants then contrast Percle's physical description of Purdue to Purdue's own description of his appearance on the night of Percle's arrest:

Q: And your hair today – fair to say you're bald on top?

A: Yes.

Q: You don't shave the top?

A: Correct.

Q: Same hair – bald on top on June 21, 2016, the night of the incident?

A: Yes.

Q: It's going to sound odd, but you weren't wearing black wig, hair extensions or anything like that?

A: No.

Q: I say "black wig." You weren't wearing any wig or hair extension?

A: No.

---

[21] Dep. Percle at 45:15-21.
[22] *Id*. at 46:4-6. (Emphasis added.)

>Q: Other than a different appearance in the uniform, you look, today, approximately the same as you looked on that morning?
>
>A: Yes.[23]

According to Defendants, Percle's description of Purdue as having white hair when, based on Perdue's testimony, Officer Purdue was "bald on top" negates Percle's identification of Purdue as the officer who assaulted him.

Defendants also rely on images from "body cam" video footage to further cast doubt on Percle's identification of Purdue as his assailant.[24] This footage, taken the night of Percle's arrest, and the images from that footage show that Officer Purdue was mostly bald, but also shows very short grey "stubble" on the sides and back of Purdue's head.[25] Defendants contend that the inconsistency between Percle's description of Purdue and the video images of Purdue taken at the time of the arrest further negate Percle's identification of Purdue as his assailant.

After reviewing and considering the summary judgment record, the Court concludes that there are genuine questions of material fact as to Percle's identification of Officer Purdue as his assailant. The summary judgment record shows that Officer Purdue was present at Percle's arrest and assisted in applying the shackles to Percle around the time period Percle claims he was assaulted.[26] Percle also identified Officer Purdue as his assailant in his deposition testimony.[27] The inconsistency in Percle's physical description of Purdue – i.e. "white haired" versus bald on top and short grey stubble on the side -- is not so great that it negates Percle's identification of Purdue as a matter of law considering

---

[23] Dep. Purdue at 37:17-10.
[24] Video Recording, Exhibits I & I-1 to Joint Motion for Summary Judgment [ECF No. 165].
[25] Id.
[26] Dep. Purdue at 28:16-20.
[27] Dep. Percle at 57:15-59:8.

this other evidence. As another court has observed, any discrepancy in the physical description of a party "merely reinforces the conclusion that genuine disputes of material fact render summary judgment improper."[28] At most, the inconsistency in Percle's identification of Purdue creates credibility questions that should be decided by the jury, not by the Court on summary judgment.[29]

### C. Identification of Officer Boone

As to Officer Boone, the Defendants' only argument is that the alleged faulty description of Officer Purdue requires that the claims against Officer Boone be dismissed as well. Defendants point to no evidence or facts casting doubt on Percle's description of Boone or his allegations about Boone's role in the assault. Rather, Defendants appear to suggest that if Percle wrongly identified Purdue, then he must have also misidentified Boone. The summary judgment record, however, supports Percle's allegation that Officer Boone was present with Purdue at the time of Percle's arrest. Like the identification of Purdue, Percle's identification of Boone involves credibility determinations that fall within the province of the jury and cannot be decided on summary judgment. Accordingly, the Court likewise finds that there is no basis to grant summary judgment with respect to the claims against Officer Boone.

---

[28] *Brown v. Prince George's Cty., MD*, 2012 WL 3012573, at *6 (D. Md. July 20, 2012).
[29] *Quorum Health Resources*, 308 F.3d at 458 ("Credibility determinations are not part of the summary judgment analysis.").

## III.
### CONCLUSION

The Court finds that there are genuine issues of material fact regarding the Percle's identification and description of Officers Purdue and Boone. Accordingly, the Joint Motion for Summary Judgment is **DENIED**.

THUS DONE in Chambers on this 6th day of July, 2020.

Robert R. Summerhays
United States District Judge